NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1348

COMMONWEALTH

vs.

DANYAEL TORRES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial, a District Court judge convicted the defendant of carrying a firearm without a license. On appeal, the defendant contends that the motion judge erred in denying his motion to suppress evidence seized after a warrantless stop and search. The defendant also argues that he is entitled to a new trial because the trial judge erred by failing to instruct himself that the Commonwealth bore the burden of proving the defendant's lack of firearms licensure, and this error was not harmless beyond a reasonable doubt. We affirm.

Discussion. 1. Motion to suppress. We summarize the facts as found by the motion judge, supplemented with undisputed evidence from the record. See Commonwealth v. Garner, 490 Mass.

90, 93-94 (2022).  On February 7, 2021, at around 1:55 P.M., a Lowell police officer received a dispatch that "a suspect had fired shots and he was traveling across the Lord Overpass."  A 911 caller had described the suspect as a white male in his early twenties, wearing a black sweatshirt, who had "snow on his person" because he had just fallen in the snow.  Within a minute or two, the officer saw the defendant "just after he passed the Lord Overpass," approximately one-quarter mile from the reported location of the shots fired.  The defendant matched the caller's description -- he was a white male, wearing a black sweatshirt, who appeared to be in his early twenties, and had snow on his clothing that looked like it came from having "just recently fallen in the snow."  The officer stopped the defendant, who "appeared nervous and kept turning away [from the officer]."  The officer pat frisked the defendant and found a firearm in his waistband.

"In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . . ." (citation omitted).  Commonwealth v. Daveiga, 489 Mass. 342, 346 (2022).  "We review independently the application of constitutional principles to the facts found" (citation omitted).  Id.  The defendant contends that the officer lacked reasonable suspicion to stop the defendant; however, he does not challenge the subsequent frisk.  He argues that the 911 caller's

2

description was too general to provide the officer with an individualized suspicion that the defendant was the suspect. See Commonwealth v. Meneus, 476 Mass. 231, 235 (2017). We disagree.

The first part of the description -- that the suspect was a white male, in his early twenties, in a black sweatshirt -- potentially could apply to many people in the area, as the defendant contends. See Commonwealth v. D.M., 100 Mass. App. Ct. 211, 216 (2021) (physical description of young black man in hooded sweatshirt and jeans too general to justify stop). However, the officer had additional information about the suspect that was more specific than race, gender, age range, and a general clothing description. A 911 caller reported the suspect had snow on his clothing from a recent fall, which distinguished him from others who may simply have been outdoors while it was snowing. The 911 caller also gave the location and direction of travel of the suspect, which was consistent with where the officer located the defendant. See Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 15 (2023) (location of likely flight path relevant for reasonable suspicion). This information was particularly pertinent where the officer saw the defendant within a minute or two of the 911 caller's report, at a location less than one-quarter mile from where the gunshots were reportedly fired. See Commonwealth v. Warren, 475 Mass.

3

530, 536 (2016) (temporal and geographic proximity between stop and location of crime are relevant factors).  Moreover, that the report was of shots fired added an "edge" to the reasonable suspicion calculus, given the potential imminent threat to public safety.  See Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 557 (2002).  In sum, the additional particularized details given to police in this case made it "reasonable [for the officer] to surmise that the [defendant] was involved in the crime under investigation."  Meneus, 476 Mass. at 237. Therefore, the officer had a reasonable suspicion to stop the defendant.  See Commonwealth v. Karen K., 491 Mass. 165, 174 (2023).

2.  Judge's failure to instruct himself on the Commonwealth's burden to prove lack of firearms licensure. Following the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), the Supreme Judicial Court determined that the Commonwealth bears the burden of proving that a defendant lacked the requisite license to possess a firearm.  Commonwealth v. Guardado, 491 Mass. 666, 690-692 (2023), S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024).  The Commonwealth does not dispute that the judge failed to instruct himself properly on the burden of proof of the defendant's lack of a firearms license, where the trial took place after Bruen but before

4

Guardado. Defense counsel did not object, and therefore we review this error to determine whether it was harmless beyond a reasonable doubt. See Commonwealth v. Bookman, 492 Mass. 396, 401 (2023).

In Bookman, 492 Mass. at 401, the court concluded that omission of the licensure instruction -- mandated prospectively by the holding in Guardado -- was harmless beyond a reasonable doubt where an officer testified that neither the defendant nor his codefendant had a firearms license, and there was "nothing in the record to suggest that the defendant disputed this testimony, or that the officer's credibility was in question." Here, the officer testified that the defendant admitted he did not have a license to carry a firearm or a firearm identification (FID) card and that dispatch confirmed the defendant's lack of firearms licensure. There is nothing in the record to suggest the defendant disputed this testimony or that the officer's credibility was in question. See Bookman, supra. We are unpersuaded by the defendant's argument on appeal that the officer's inability to recall at trial details about the defendant's clothing and the showup identification procedure that occurred just prior to the defendant's arrest amounted to a successful attack on the officer's credibility. Furthermore, the defendant did not cross-examine the officer regarding his testimony that the defendant lacked a valid firearms license and

5

FID card.  To the contrary, the defendant relied on that testimony to argue in closing that, because the defendant had "truthfully indicated" he did not have a license to carry or an FID card, the judge should find that his possession of the firearm was transitory.  On this record, we conclude that the judge's omission was harmless beyond a reasonable doubt.  See id.

Judgment affirmed.

By the Court (Meade, Massing & Brennan, JJ.[1]),

Clerk

Entered:  February 17, 2026.

---

[1] The panelists are listed in order of seniority.